IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-1075-L** |
| | § | |
| **SALLY HAND-BOSTICK** | § | |
| **and ELIZABETH SPINELLI**, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendants Sally Hand-Bostick and Elizabeth Spinelli's Motion for

Summary Judgment, filed March 7, 2011; and the United States' Motion to File Supplemental

Authority, filed September 2, 2011.  After carefully reviewing the motions, briefs, appendices,

response, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendants

Sally Hand-Bostick and Elizabeth Spinelli's Motion for Summary Judgment; and **denies as moot**

the United States' Motion to File Supplemental Authority.

**I.      Factual and Procedural Background**

The government originally brought this action against numerous individual defendants in the

United States District Court for the Middle District of Florida on April 2, 2009, requesting

permanent injunctive relief under the Internal Revenue Code.  The government's claims against

Defendants Edward Adams, Timothy Adams, Sally Hand-Bostick ("Hand"), and Elizabeth Spinelli

("Spinelli") (Hand and Spinelli, collectively, the "Moving Defendants") were severed and

transferred to this court on June 2, 2009.  On April 27, 2010, Edward Adams and Timothy Adams

each stipulated to a permanent injunction with the government.  The government filed its amended complaint against Hand and Spinelli on August 16, 2010.

This case arises out of an expansive fraudulent tax scheme masterminded by Greg Guido ("Guido") and George Calvert ("Calvert").  The scheme involved tax credits available under section 45K of the Internal Revenue Code for the production and sale of fuel from nonconventional sources, commonly known as "FNS Credits."  Often times, the producers of qualified fuels under Section 45K will end up with more FNS Credits than they need in a given year to eliminate their tax liability, and unused credits cannot be carried forward into subsequent tax years. Therefore, in certain situations, producers are allowed to monetize their excess FNS Credits and sell or assign them to third parties, allowing the producers to derive some benefit from their unused credits.

With respect to the FNS Credits at issue in this case, Guido and Calvert purportedly owned and operated several methane gas production facilities on landfills located in various parts of the country through an entity they created called Gas Recovery Partners 2, GP ("GRP2").  Beginning in 2003, Louis Powell ("Powell"), a Texas promoter involved in the scheme, started representing to taxpayers and tax preparers – including Hand, who was a tax-preparation software distributor for Drake Software  – that he had procured the rights to millions of dollars of FNS Credits derived from GRP2 facilities through an entity that he created called U.S. Energy Credits ("USEC").  Powell explained to Hand that her clients could purchase an interest in one of several partnerships created by Powell that qualified for FNS Credits due to its ownership interests in fuel production facilities operated by GRP2, which would entitle the clients to take FNS Credits on their federal income tax returns based on their percentage ownership of the fuel sold by those facilities.  Powell also told

Hand that if she agreed to help him bring other tax return preparers on board, he would pay her a portion of the value of the credits sold by those tax return preparers as commission for her services.

Hand admittedly did not fully understand the FNS Credits, but it was her understanding from Powell's representations that all necessary due diligence had been conducted and that monetization of the credits was accomplished properly. Specifically, Powell provided her with materials and documentation representing that the promoters had researched the FNS Credits in great detail and substantiating that USEC actually owned interests in landfills qualifying for the tax credits. These materials, however, lacked names of the "paid professionals," "qualified facilities," and "highly regulated producers" that USEC purported to work with and maintain. *See* Defs.' App. 26-28. Hand thereafter began successfully promoting the scheme to other tax return preparers. She became a "top" FNS Credit seller and received payment equal to 5% of every FNS Credit that her customers claimed in 2004 for the 2003 year.

In mid-2004, Powell introduced Hand to Guido and Calvert and told her that they were taking over the FNS Credit operation. Powell also informed her that her customers' partnership interests would now be "working interests" in a GRP2 production facility. In summer 2004, Guido and Calvert represented to Hand that there were "extra" credits available for 2003 that she could sell to her customers. Thereafter, in late 2004, Hand promoted these "extra" credits to her customers and received checks made out to GRP2 for purchase of the "working interest" that Guido and Calvert described.

In December 2006, Calvert told Hand that the FNS Credits were no longer available. Hand then provided her customers with a backdated form that purportedly assigned their FNS interest back

to Calvert and Guido on January 1, 2006.  In total, Hand sold over $2.4 million worth of disallowed FNS Credits to her customers between 2004 and 2006.

Spinelli, a certified public accountant with 23 years of experience, first learned about FNS Credits in 2004 and called Hand to learn more about them.  Hand told Spinelli that she was offering the credits to her clients through USEC, and she referred Spinelli to Powell for additional information.  She ultimately relied on Powell's representations that he had extensively researched the FNS Credits and had personally visited all of the landfills to ensure that they were functioning properly.  Thereafter, she began offering FNS Credits to her customers at her tax preparation business.  Between 2004 and 2006, Spinelli sold over $452,000 worth of disallowed FNS Credits to her customers.  She stopped in 2006 when Hand told her that the FNS Credits were no longer available, and she provided her customers with the same backdated form which purportedly assigned their FNS interest back to Calvert and Guido on January 1, 2006.

The Internal Revenue Service ("IRS") began investigating the FNS Credit scheme in 2004 and performed audits of the Moving Defendants' customers.  By 2008, Hand and Spinelli had been apprised by the government of the ownership problems related to the FNS Credits.  Beginning in 2009, Hand and Spinelli began claiming thousands of dollars in long term capital loss deductions on their customers' 2008 federal income tax returns, relating to their customers' purported interests in gas-producing properties.  Hand and Spinelli each described the asset related to the loss as GRP2 and stated that it represented the disallowed FNS Credit interest purchased by their customers.  Hand continued asserting a long term capital loss in 2010 for the tax year 2009, and Spinelli started asserting theft loss deductions relating to the disallowed FNS Credits on her customers' tax returns in mid-2008.

**Memorandum Opinion and Order - Page 4**

The Moving Defendants now move for summary judgment against the government. Specifically, they argue that there is no evidence to establish that they knew or should have known about the fraudulent tax scheme. Further, they argue that permanent injunctive relief is unwarranted in this case because there is no indication that a permanent injunction is necessary to prevent recurrence of the complained of conduct. The government asserts that fact questions exist with respect to these matters and that its claims for permanent injunctive relief under I.R.C. §§ 7408, 7407, and 7402 for various violations of the Code should be allowed to proceed to trial.

## II.     Legal Standard – Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio*, 475 U.S. 574, 586 (1986).   Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## III.     Analysis

The government seeks injunctive relief against the Moving Defendants under I.R.C. §§ 7408, 7407, and 7402.  Hand and Spinelli contend that the government cannot establish its right to an injunction under any of these statutes as a matter of law.  The court analyzes each statute in turn and considers the summary judgment evidence the parties have provided in support of their contentions.

### A.      Injunctive Relief Under I.R.C. § 7408

Section 7408 of the Internal Revenue Code authorizes the government to seek an injunction against a defendant who has engaged in conduct subject to penalty under sections 6700 or 6701.[1] The government contends that the summary judgment evidence demonstrates that the Moving Defendants have engaged in conduct subject to penalty under section 6700 because they knew or had reasons to know that they made false statements in regard to the FNS Credit scheme and that they made gross valuation overstatements relating to the scheme and the subsequent loss deductions. With respect to section 6701, the government contends that the summary judgment evidence shows that the Moving Defendants knew that the tax returns they prepared for their FNS Credit customers would result in an understatement of their customers' tax liabilities.  The court addresses each section separately.

### 1.      Conduct Subject to Penalty Under I.R.C. § 6700

Section 6700 of the Internal Revenue Code penalizes the conduct of a person who, in organizing or participating in any arrangement, makes or furnishes a statement concerning the allowability of any deduction or tax credit that she knows or has reason to know is false or fraudulent as to any material matter.  I.R.C. § 6700(a)(2)(A).  Section 6700 also penalizes the conduct of a person who, in organizing or participating in any arrangement, makes or furnishes a gross valuation overstatement as to any material matter.  *Id.* § 6700(a)(2)(B).  In this case, the government argues that the Moving Defendants engaged in both types of prohibited conduct in connection with the FNS Credit scheme.

---

[1]Although section 7408 also authorizes an injunction against a defendant who engages in conduct subject to penalty under section 6707 or 6708, or who engages in conduct that violates any requirement under regulations issued under 31 U.S.C. § 330, the government does not seek injunctive relief on such grounds, and the court does not consider them.

### a.    False or Fraudulent Statements

With respect to the government's contention relating to false or fraudulent statements, the court is satisfied by the evidentiary record that the Moving Defendants lacked actual knowledge of the fraudulent tax scheme perpetuated by Guido and Calvert.  The deposition testimony of the investigating IRS agent, Jean Lane, supports the court's conclusion.  *See* Defs.' App. 443 [138:2-10], 444 [144:12-18] (stating that the IRS had no evidence or concrete facts to demonstrate either Hand's or Spinelli's actual knowledge as to the illegitimacy of the FNS Credit scheme); *id.* at 449-50 [159:19-160:2] ("No, I don't believe [Hand or Spinelli] knowingly deceived or defrauded [their clients].").  Jean Lane's testimony is also in accordance with a memorandum issued by the IRS on January 14, 2008, describing the tax scheme and stating that the tax preparers were not aware of a critical fact related to ownership of the landfills.  *See id.* at 289-90 ("[W]e have found no evidence that the preparers who were sold this scheme by the promoters were knowledgeable about the true landfill ownership.").

Moreover, the government does not appear to dispute that the Moving Defendants lacked actual knowledge of the fraudulent FNS Credit scheme.  Instead, the government  points to numerous "red flags" that it contends should have tipped Hand and Spinelli off that something was amiss.  Summary judgment is therefore proper to the extent that the government seeks injunctive relief premised upon the Moving Defendants' "actual" knowledge related to the fraudulent nature of the tax scheme.  By the same token, however, the Moving Defendants do not dispute that they participated in an arrangement by which they made materially false statements to their clients concerning the allowability of tax credits; they only contest the government's assertion that they "had reason to know" that their statements were materially false at the time they were made.

**Memorandum Opinion and Order - Page 8**

In support of its position, the government directs the court to the Internet research the Moving Defendants performed prior to selling the landfill interests to their customers.   The government contends that such research, in which the Moving Defendants verified that FNS Credits existed, was woefully insufficient to verify the ownership interest in the landfills and that Hand and Spinelli were not at liberty to rely on the "mere representations of individuals they barely knew." Pl.'s Resp. Br. 26.   In addition, the government identifies "red flags" that it contends should have put the Moving Defendants on notice of the fraudulent tax scheme.   The first "red flag" was Powell, Guido, and Calvert never offering the Moving Defendants "any substantiation regarding the ownership of the landfill interests."   *Id.* at 30.   Although it admits that Hand and Spinelli received a guidebook, a few private letter rulings, and legal assertions "backed-up only by unseen research by unidentified individuals," the government contends that these materials did not warrant the Moving Defendants' reliance thereon.   *Id.*

The second and third "red flags" that the government identifies relate to the apparent backdating of the landfill ownership interests of the Moving Defendants' customers.   Specifically, the government asserts that the customers never owned a landfill interest during the same year they received a FNS Credit purportedly related to that interest.   In addition, the evidence shows that the Moving Defendants provided their clients with backdated documents, and the government contends that this was done to make it appear that their customers owned valid landfill interest in prior years.

The fourth and fifth "red flags" the government identifies relate to the method of payment for the purported landfill interests.   The evidence shows that promissory notes were backdated and nonrecourse, meaning that the Moving Defendants' customers were not personally liable on them. Because these notes were used only in the first year of the customers' participation, despite the

customers being required to purchase a new interest each year if they wanted to use the FNS Credits, the government contends that the Moving Defendants should have known these notes were a sham. In addition, the evidence shows that the Moving Defendants' customers made payments on the promissory notes in the form of checks, which were not deposited until *after* the customers filed their federal tax returns and reaped the tax savings from the scheme. Thus, the government contends that the customers' payments for their purported landfill interests were funded by the related tax savings and that Hand and Spinelli should have been clued in to what was really going on.

The Moving Defendants argue that these supposed "red flags" prove nothing because of the great complexity of legal questions raised in this case that invoke contract and property law. Hand and Spinelli assert that they are not attorneys, have no legal background, and were in an inferior position to the government insofar as learning the full extent and workings of the fraudulent tax scheme. They also point to evidence establishing that IRS revenue agent Stacy Prine had the help of lawyers and industry specialists for years during the investigation of the scheme, and she still never reached a final conclusion regarding the legitimacy of the Promoters' FNS Credits. Moreover, the Moving Defendants submit that at least one lawyer, Mark Thomas, ostensibly believed that the means of conveyance in the FNS Credit scheme was potentially proper.

The court, in its review of the summary judgment evidence and the arguments of counsel, determines that there is a genuine factual dispute as to whether the Moving Defendants "had reason to know" about the fraudulent scheme in light of the purported "red flags" identified by the government and the supposedly minimal Internet research conducted by Hand and Spinelli. The court is unable to accept either side's position based solely on the evidence and arguments before it because both sides presuppose that the requisite scienter is present (or absent, as the case may be).

**Memorandum Opinion and Order - Page 10**

For example, with respect to the allegedly fraudulent subsequent long-term capital loss deductions the Moving Defendants claimed on their customers' tax returns, such behavior is consistent with a tax preparer who honestly believed the original tax scheme was legitimate, and who did not learn of the scheme's fraud until a later date. The loss deductions would have been proper under sections 165(a) or 165(c)(3) for loss of investment or loss arising from the Promoters' fraud or theft. Whereas, if the court presupposes that the Moving Defendants had reason to know about the fraudulent tax scheme from the outset, it goes without saying that their subsequent long-term capital loss deductions would likewise have been fraudulent because the deductions would have arisen from losses via a fraudulent scheme that they should have known they were engineering. In other words, the subsequent long-term capital loss deductions provide evidence of nothing unless the threshold issue of scienter is first decided.

The Moving Defendants are correct in that this case presents complex legal questions which have demonstrably confounded investigating IRS agents and attorneys. From the summary judgment evidence, reasonable minds could arrive at different conclusions as to whether a tax preparer exercising the ordinary care of her industry would have had "reason to know" of the fraudulent nature of the tax scheme. A relevant factor to consider in making that determination is whether the ordinary standard of care in the tax preparer industry encompasses a deep understanding of the legal issues raised by the conveyances and general methodology by which the FNS Credit scheme in this case operated. Because there is a genuine dispute of material fact, the court determines that this issue must be reserved for the trier of fact to decide.

### b.        Gross Valuation Overstatements

With respect to the government's contention relating to gross valuations overstating any material matter, section 6700 eliminates the requirement of scienter.  *See* I.R.C. § 6700(a)(2)(B); *United States v. Campbell*, 704 F. Supp. 715, 726 (N.D. Tex. 1988), *aff'd*, *United States v. Campbell*, 897 F.2d 1317 (5th Cir. 1990) ("Scienter need not be shown to hold a person liable for gross valuation overstatements.").     The Internal Revenue Code defines "gross valuation overstatement" as follows:

> [A]ny statement as to the value of any property or services if (A) the value so stated exceeds 200 percent of the amount determined to be the correct valuation, and (B) the value of such property or services is directly related to the amount of any deduction or credit allowable under chapter 1 to any participant.

I.R.C. § 6700(b)(1).  The government contends that the Moving Defendants provided gross valuation overstatements to their customers because they assigned a value to landfill ownership interests that in actuality did not exist and were worth nothing.  Because the interests were worth nothing, the government contends that assigning *any* value to those interests would have been in excess of 200 percent of the correct valuation.

The Moving Defendants argue that they are entitled to judgment as a matter of law on this issue because it was not them, but rather the tax calculator that stated the value, and they had no control over the sum that the tax calculator determined.  They contend that they "merely inputted their clients' required tax information into the tax calculator and collected the sum the calculator determined was owed." Defs.' Br. 35.  Hand and Spinelli therefore conclude that they did not "make or furnish" a gross overvaluation statement.

The court believes that a fact issue is present with respect to this matter because, even if the Moving Defendants did not "make" the gross overstatement themselves, the government's evidence suggests that they at least "furnished" such overstatements to their customers via assignment agreements and production reports. The court therefore reserves this issue for the trier of fact.

### 2.    Conduct Subject to Penalty Under I.R.C. § 6701

Section 6701 of the Internal Revenue Code penalizes the conduct of a person who (1) assists in the preparation of a return or other document, (2) knows or has reason to believe that the document "will be used in connection with any material matter arising under the internal revenue laws," and (3) knows that the document would, if so used, result in an understatement of the tax liability of another person. I.R.C. § 6701(a). In other words, to prove a violation of section 6701, the government must demonstrate that the tax preparer had "actual" knowledge that the portion of the tax return complained of would result in an understatement of tax liability. *See United States v. Bussey*, 942 F.2d 1241, 1249 (8th Cir. 1991) (finding error in a "willful blindness" instruction used as a substitute for the "actual knowledge" requirement of section 6701).

The court agrees that section 6701 requires actual knowledge on the part of the tax preparer insofar as knowing that the return would understate a person's tax liability. As determined above, there is no genuine dispute between the parties as to the Moving Defendants' lack of "actual knowledge" in this case, and there is no evidence to support a contention that Hand or Spinelli possessed actual knowledge of the fraudulent scheme. Indeed, the evidence reveals that nearly everything that was communicated to the Moving Defendants by the Promoters of the scheme constituted, at best, a false representation.

**Memorandum Opinion and Order - Page 13**

Accordingly, because the Moving Defendants knew nothing about the fraud, it follows that they would not have known that preparing their customers' tax returns would have resulted in an understatement of tax liabilities. The Moving Defendants are therefore entitled to summary judgment relating to their alleged conduct subject to penalty under section 6701 because they lacked actual knowledge of the fraudulent scheme.

### B.    Injunctive Relief Under I.R.C. § 7407

Section 7407 of the Internal Revenue Code authorizes the government to seek an injunction against a defendant who has engaged in conduct subject to penalty under section 6694 or in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws.[2] The government contends that the summary judgment evidence demonstrates that the Moving Defendants have engaged in conduct subject to penalty under sections 6694(a) and 6694(b) because they knew or should have known that they prepared tax returns containing unreasonable provisions; acted willfully in understating their customers' tax liabilities; and acted with reckless and intentional disregard of rules and regulations. The government also contends that the Moving Defendants engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue law. The court addresses each of these grounds separately.

### 1.    Conduct Subject to Penalty Under I.R.C. § 6694(a)

Section 6694(a) of the Internal Revenue Code penalizes the conduct of a tax return preparer who prepares any return that contains an unreasonable position and knew or reasonably should have

---

[2]Although section 7407 also authorizes an injunction against a defendant who engages in conduct subject to penalty under section 6695, or who guarantees the payment of any tax refund or allowance of any tax credit, the government does not seek injunctive relief on such grounds, and the court does not consider them.

known of the position.  I.R.C. § 6694(a).  The government argues that the Moving Defendants violated this provision hundreds of times with every tax return claiming false FNS Credits that they prepared for their customers.  Hand and Spinelli assert that their conduct did not violate this provision because the requisite scienter was absent and that, in any event, they were saved under the "reasonable cause exception" under I.R.C. § 6694(a)(3).

With respect to scienter, the court agrees that there is no evidence that the Moving Defendants "knew" that the positions on the tax returns they prepared were unreasonable.  As discussed above, however, there is a fact question whether Hand and Spinelli "reasonably should have known" that the positions were unreasonable.  The "reasonable cause exception" under which the Moving Defendants seek relief from section 6694(a) states as follows:

> No penalty shall be imposed under this subsection if it is shown that there is reasonable cause for the understatement and the tax return preparer acted in good faith.

I.R.C. § 6694(a)(3).  The Moving Defendants contend that this exception applies to them because their reliance upon the Promoters' representations was reasonable and they acted in good faith, without any knowledge of the fraudulent nature of the scheme.  In support, they turn again to the deposition testimony of IRS agent Jean Lane in which she suggested that the FNS Credits could possibly have been monetized to investors had the proper ownership been in place.[3]  Def.'s App. 447 [156:20-23].

The court is unpersuaded that the summary judgment evidence conclusively establishes that the Moving Defendants' reliance upon the representations of the Promoters was reasonable in light

---

[3]The court notes that she accompanied her statement with the caveat that ownership by itself would not have necessarily guaranteed an automatic acquisition of the FNS Credit and that other things would also need to be in place.

**Memorandum Opinion and Order - Page 15**

of the industry standard of care owed by tax preparers. This issue relates back to whether Hand and Spinelli "should have known" that something was amiss about the scheme. Because this is a threshold determination that should be made by the trier of fact, the court makes no determination that the Moving Defendants had "reasonable cause" for the understatements on the tax returns they prepared. Likewise, whether Moving Defendants acted in "good faith" in light of their industry's standard of care is a fact issue.

### 2.    Conduct Subject to Penalty Under I.R.C. § 6694(b)

Section 6694(b) of the Internal Revenue Code penalizes the conduct of a tax return preparer who willfully or recklessly prepares a return containing an understatement of tax liability. I.R.C. § 6694(b). The government argues that the Moving Defendants violated this provision because they engaged in both willful and reckless conduct in preparing tax returns that understated their customers' tax liability.

First, with respect to whether the Moving Defendants willfully prepared tax returns understating their customers' tax liability, the court equates "willfulness" with actual knowledge. As the court has already determined from the summary judgment evidence, Hand and Spinelli lacked actual knowledge as to the fraudulent nature of the FNS Credit scheme. They did not realize they were understating their customers' tax liability. "Willful" means a "voluntary, intentional violation of a known legal duty." *United States v. Bishop*, 412 U.S. 346, 360 (1973). As stated, the factual dispute in this matter is not whether the Moving Defendants *knew* they had a legal duty, but whether they *should have known* they had a legal duty. Because Hand and Spinelli lacked actual knowledge, they are entitled to judgment as a matter of law with respect to any attempt by the government to enjoin them for any "willful" conduct arising under section 6694(b).

**Memorandum Opinion and Order - Page 16**

Second, with respect to whether the Moving Defendants recklessly prepared tax returns understating their customers' tax liability, the parties agree that courts interpret the "reckless or intentional disregard of rules" language under section 6694(b) as a negligence standard. *See, e.g.*, *United States v. Bailey*, 789 F. Supp. 788, 812-13 n.17 (N.D. Tex. 1992) ("The legislative history of Code section 6694 also supports this interpretation [of a negligence standard]."). Negligence is defined as including "any failure to make a reasonable attempt to comply with the provisions of [the Internal Revenue Code]." I.R.C. § 6662(c); *Bailey*, 789 F. Supp. at 812-13. Although Hand and Spinelli argue that they performed due diligence on the availability of the FNS Credits under the Code, the court has already determined that whether the Moving Defendants' conduct in this case was reasonable is an issue for the trier of fact to decide, because it goes directly to the issue of whether Hand and Spinelli "should have known" better.

### 3.   Fraudulent or Deceptive Conduct Substantially Interfering With Law

An injunction may also be appropriate under section 7407 of the Internal Revenue Code if the government can establish that a defendant "engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." I.R.C. § 7407(b)(1)(D). The government's position hinges on the long-term capital loss deductions that the Moving Defendants included on their customers' tax returns once they became apprised of the underlying fraudulent tax scheme. The government characterizes this as a "blatant disregard for the law" and that the Moving Defendants' "adamant defense of frivolous positions in the face of overwhelming evidence interferes with the proper administration of the Internal Revenue laws." Pl.'s Resp. Br. 46. The court disagrees.

As discussed previously above, the court is unimpressed by the government's "evidence" of long-term capital loss deductions that it contends Hand and Spinelli included on their customers' tax returns to perpetuate a fraudulent scheme.  The government is once again presupposing that the requisite scienter has been established in this case and that its position is correct.  The government has established neither the requisite scienter nor the correctness of its position.  From the evidentiary record, the court has already determined that the Moving Defendants lacked actual knowledge of the fraudulent nature of the scheme.  Accordingly, the court finds no genuine dispute as to any material fact concerning the Moving Defendants' contention that they did not engage in fraudulent or deceptive conduct.  Hand and Spinelli are therefore entitled to judgment as a matter of law with respect to this issue.

### C.      Whether Injunction is Necessary to Prevent Recurrence of Prohibited Conduct

Sections 7407 and 7408 of the Internal Revenue Code allow injunctive relief only if such relief is necessary to prevent the recurrence of prohibited conduct.  I.R.C. §§ 7407(b)(2), 7408(b)(2). The court believes that, at this juncture, it is premature to determine from the evidentiary record whether injunctive relief is necessary to prevent the Moving Defendants' alleged recurrence of prohibited conduct.  Such a determination is best made only after the trier of fact determines whether Hand and Spinelli "should have known" better than to participate in the fraudulent scheme in light of all of the "red flags" and "unsubstantiated representations" that the government contends (and the evidence suggests) were present in this case.

### D.      Injunctive Relief Under I.R.C. § 7402

Section 7402 of the Internal Revenue Code acts as a catch-all provision and authorizes the government to seek an injunction against a defendant as necessary "for the enforcement of the

internal revenue laws." I.R.C. § 7402(a).  In the same vein as its discussion immediately above, the court determines that the weighing of equity at this juncture is premature with respect to injunctive relief under section 7402.  Such a determination is best made only after the trier of fact determines whether Hand and Spinelli "should have known" better than to participate in the fraudulent scheme.

### E.    Evidentiary Objections

The Moving Defendants object to some of the government's summary judgment evidence. Specifically, they object to the declaration of William Ogden based on lack of foundation.  The Moving Defendants also contend the declaration constitutes an unsupported factual conclusion.  The Moving Defendants also object to Exhibit 7 to the declaration of William Ogden – an e-mail sent by Ogden to Hand on April 16, 2008 – as inadmissible hearsay, which has not been properly authenticated.  Hand and Spinelli also object to certain deposition excerpts of Ronald Fontenot and Craig Johnson, contending that the proper foundation was not laid and the testimony was not based on personal knowledge.

The court did not rely on this evidence in making its ruling, and the outcome would have been no different even if the court had.  Because this evidence had no impact or effect on the court's opinion, the court **denies as moot** the Moving Defendant's evidentiary objections.

### IV.    Conclusion

For the reasons stated herein, the court determines that no genuine dispute of material fact exists with respect to the Moving Defendants' lack of actual knowledge of the fraudulent nature of the tax scheme.  With respect to whether the Moving Defendants reasonably *should have known* more than they actually did, a fact question remains for the trier of fact to decide.  The court

**Memorandum Opinion and Order - Page 19**

accordingly **grants in part** and **denies in part** Defendants Sally Hand-Bostick and Elizabeth Spinelli's Motion for Summary Judgment.

Defendants Sally Hand-Bostick and Elizabeth Spinelli's Motion for Summary Judgment is **granted** in the following respects:

- Any theory of recovery advanced by the government that alleges that the Moving Defendants possessed "actual knowledge" of the fraudulent nature of the tax scheme is **dismissed with prejudice**;

- The government's claim for injunctive relief under section 7408 alleging that the Moving Defendants engaged in conduct subject to penalty under section 6701 is **dismissed with prejudice**;

- The government's claim for injunctive relief under section 7407 alleging that the Moving Defendants acted "willfully" under section 6694(b) is **dismissed with prejudice**; and

- The government's claim for injunctive relief under section 7407 alleging that the Moving Defendants engaged in fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue law is **dismissed with prejudice**.

In all other respects, the court **denies** Defendants Sally Hand-Bostick and Elizabeth Spinelli's Motion for Summary Judgment in light of the ruling on the summary judgment motion, the court **denies as moot** the United States' Motion to File Supplemental Authority. The court will set this matter for trial by separate document.

**It is so ordered** this 12th day of September, 2011.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 20**